

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 03, 2018.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-51561-CAG |
| | § | |
| ROSA M. DIAZ TEJEDA, | § | |
| | § | CHAPTER 13 |
| Debtor. | § | |

**ORDER DENYING TRUSTEE'S OBJECTION TO CLAIM OF WELLS FARGO BANK (ECF NO. 16)**

On this date came on to be considered the above-styled and numbered Chapter 13 case and, in particular, the Trustee's Objection to Claim of Wells Fargo Bank (ECF No. 16) ("Objection to Claim"). The Court held a hearing on this matter on March 22, 2018, and took the matter under advisement. The parties were allowed to file briefs in support by April 23, 2018. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B). For reasons stated in this ruling, the Court is of the opinion that the Objection to Claim should be DENIED.

FACTUAL BASIS AND PARTIES CONTENTIONS

Debtor filed a petition for bankruptcy relief with this Court under chapter 13 (ECF No. 1)

1

on July 3, 2017. On October 23, 2017, the Chapter 13 Trustee (the "Trustee") filed her Objection to Claim of Wells Fargo Bank (ECF No. 16). Debtor filed her Response to Trustee's Objection to Proof of Claim of Wells Fargo on October 26, 2017. On November 29, 2017, Creditor Wells Fargo Bank filed a Response to Trustee's Objection to Claim of Wells Fargo Bank (ECF No. 24). On April 23, 2018, Trustee filed her Brief in Support of Trustee's Objection to Claim of Wells Fargo Bank, N.A. (Claim #2-1) (ECF No. 48). On the same day, Wells Fargo filed its Supplemental Brief of Wells Fargo in Support of its Response to Chapter 13 Trustee's Objection to Proof of Claim (ECF No. 49). Also on the same day, Debtor filed her Brief in Support of Debtor's Response to Trustee's Objection to Proof of Claim and in Support of Confirmation of Chapter 13 Plan (ECF No. 51).

The factual basis of the Motion is not contested. Juan R. Ramirez and Sonia A. Ramirez ("Mr. and Ms. Ramirez") executed a note with Accredited Mortgage Services on April 11, 2008, which was secured by property located at 3326 Gazelle Range, San Antonio, Texas. The Note and Deed of Trust were subsequently assigned to Wells Fargo Bank (the "Creditor"). On July 3, 2014, Debtor entered into a Note and Deed of Trust to Secure Assumption with a five year balloon payment with Mr. and Ms. Ramirez concerning the above referenced property. Debtor has no contractual obligations to Creditor and does not have privity of contract concerning the contract executed between Mr. and Ms. Ramirez and Creditor. There is no evidence that Creditor contested the sale of July 3, 2014, and Creditor does not object to its treatment under the Debtor's chapter 13 plan. On October 16, 2017, Creditor filed Claim #2 as secured by a recorded Deed of Trust in the aggregate amount of $243,010.89, which includes arrears of $17,431.30.

The sole basis for the Objection to Claim is that Debtor is a stranger to the contract between Creditor and Mr. and Ms. Ramirez, and therefore, Creditor cannot be forced to now participate in

2

Debtor's bankruptcy because there is no contractual relationship between Creditor and Debtor. Stated differently, Trustee believes that the lack of privty between Debtor and Creditor makes the Claim invalid.

Debtor, however, argues that by operation of 11 U.S.C. § 541(a),[1] Debtor's interest in the property became property of the bankruptcy estate on July 3, 2017, when the petition for relief under chapter 13 was filed. Further, privty is not required for the transaction that occurred between Debtor and Mr. and Mrs. Ramirez. Debtor contends that a Due on Sale clause cannot prevent alienability, and to the extent it purports to do so and to prevent its borrower from selling the property to a third party, it is unenforceable under Texas law. Thus, the transfer is valid and the property became part of the estate pursuant to Debtor's interest in the property via the Note and Deed of Trust to Secure Assumption.

Creditor also responded to the Objection to Claim and generally denied each and every allegation contained within the Objection to Claim. Creditor further contends that it consents to the treatment of its Claim in Debtor's case and wishes to participate within the bankruptcy process.

## LEGAL ANALYSIS

The question this Court must answer is whether the Objection to Claim should be granted on the basis that there is no privity of contract between Debtor and Creditor. This Court finds that a lack of privty will not prevent Creditor from participating in this bankruptcy case.

The Court, as an initial matter, finds no Fifth Circuit case law that deals with this exact issue. The Circuit has, however, consistently ruled that a bankruptcy "claim" shall be defined broadly, in keeping with ***Johnson v. Home State Bank***, 501 U.S. 78 (1991).

Trustee focuses on the definition of a "creditor" within the Bankruptcy Code. Under

---

[1] Unless otherwise noted, all references to the United States Code appear under Title 11.

3

Section 101(10), the term "creditor" is defined as—

> (a) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
> (b) entity that has a claim against the estate of a kind specified in section 348(d),502(f), 502(g), 502(h) and 502(i) of this title; or
> (c) entity that has a community claim.

11 U.S.C.A. § 101(10) (2018). Trustee argues that Creditor does not have a claim against Debtor and was not a party to the agreement between Debtor and Mr. and Mrs. Ramirez. As such, Creditor does not meet the definition of a creditor under Section 101(10).

In response, Creditor argues that Trustee's analysis of a creditor is incomplete because it does not consider the meaning of "claim against the debtor" under Section 102(2) which Creditor believes to be outcome determinative. Section 102(2) states that "[i]n this title—'claim against the debtor' includes *claim against property of the debtor*." 11 U.S.C.A. § 102(2) (emphasis added). Creditor proposes that the definition of a "claim against the debtor" in Section 102(2), when applied to the definition of a creditor in Section 101(10)(A), must be read as an "entity that has a claim against the debtor. [which] includes [a] claim against property of the debtor,] that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C.A. §§ 101(10)(A), 102(2). The Court agrees. Creditor's lien against the Debtor's real property secures a right to payment. As such, Creditor has a "claim against property of the Debtor" in accordance with Section 102(2).

Debtor also directs this Court to the *Johnson* case for the proposition that Congress intended to incorporate the broadest definition of "claim" possible. *Johnson*, 501 U.S. at 83. In *Johnson*, the debtor defaulted on promissory notes secured by a mortgage on his farm. *Id.* at 80. The creditor, Home State Bank, began foreclosure proceedings that were halted by the debtor's filing under chapter 7. *Id.* The debtor received a discharge of personal liability on the notes, but in

4

rem liability on the notes survived. *Id.* The creditor reinitiated foreclosure proceedings, and the debtor then filed for reorganization under chapter 13, listing the mortgage as a claim of the estate. *Id.* The plan was confirmed over the creditor's objection. *Id.* at 81. On appeal, the district court held that the Bankruptcy Code does not allow a debtor to include in a chapter 13 plan a mortgage used to secure an obligation for which personal liability has been discharged in chapter 7 proceedings. *Id.* The circuit court affirmed. *Id.* The Supreme Court, however, held:

> A mortgage lien securing an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a 'claim' within the meaning of 11 U.S.C.A. 101(5) and is subject to inclusion in an approved Chapter 13 reorganization plan. Congress intended in 11 U.S.C.A. 101(5) to incorporate the broadest available definition of 'claim[.]'

*Id.* at 78 (citation omitted). In the case at bar, there is no issue about extinguished personal liability. Debtor cites this case for the proposition that the definition of "claim" is broad, and as such, the treatment of Creditor in the plan should stand regardless of privity between Debtor and Creditor. Further, the *Johnson* Court noted:

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

*Id.* at 84. The Court further analyzed Section 102(2) and reinforced its holding that the mortgagee had a claim:

> [Section] 102(2) establishes, as a "[r]ul[e] of construction," that the phrase "'claim against the debtor' includes claim against property of the debtor." A fair reading of Section 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a "claim against the debtor" for purposes of the Code.

5

*Id.* Thus, *Johnson*'s holding is consistent with the facts in the case at bar. Creditor's "claim" must be given the broadest possible definition available in keeping with *Johnson*'s holding.

Trustee relies on two cases in support of her argument that lack of privty extinguishes Wells Fargo's inclusion in Debtor's case: *In re Mullin*, 433 B.R. 1 (Bankr. S.D. Tex. 2010) and *In re Tewell*, 355 B.R. 674 (Bankr. N.D. Ill. 2006).

In *Tewell*, a creditor held the first mortgage lien on real property through a note and mortgage agreement with Alex Almaraz. *Tewell*, 355 B.R. at 677. The debtor in the case was neither the maker of the note nor the mortgagor of the aforementioned property. *Id.* Almaraz transferred the property to the debtor notwithstanding a "due-on-sale" clause that stated "[i]f all or any part of the Property or any interest in it is sold or transferred . . . without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument." *Id.* at 677. The creditor did not give written consent to the transfer. *Id.* The creditor sought foreclosure on the property, and the debtor filed a chapter 13 bankruptcy petition. *Id.* The debtor sought to cure the arrearage in the plan and the plan was confirmed. *Id.* The creditor then filed a motion for relief from the automatic stay contending that the stay should be lifted because the debtor does not appear on the note and that the transfer violated the due-on-sale clause under the original note. *Id.* at 678. The debtor argued that because the creditor was aware that she was paying the mortgage and remained silent, laches, estoppel, and waiver apply to the creditor. *Id.* The court held that a chapter 13 "debtor who obtained residential mortgage property from the original mortgagor without adhering to the due-on-sale clause is not permitted to cure the mortgage defaults through the Chapter 13 plan over the objection of the mortgage holder." *Id.* at 681. Further, the *Tewell* court held that neither the mortgagee's failure to invoke the due-on-sale clause in mortgage immediately upon original mortgagor's quitclaiming its interest in property to chapter

6

13 debtor nor the mortgagee's subsequent acceptance of mortgage payments from the debtor up until time of debtor's default was sufficient to bar mortgagee, on laches, equitable estoppel, or waiver theory, from asserting its rights. *Id.* at 683–86. Thus, the focus of the court's holding was on the objection of the creditor. In the case at bar, there is only the objection of Trustee.

In *Mullin*, the debtor was not a maker on the original note. *Mullin*, 433 B.R. at 4. Rather, the debtor acquired the property when James and Carol Morgan, the original parties to the note with the creditor, executed a warranty deed with the debtor in violation of the due on sale clause in the original note between the Morgans and the creditor. *Id.* at 5. Neither the debtor nor the Morgans gave notice to the creditor. *Id.* The debtor filed a chapter 13 plan that sought to treat the arrearage under the plan. *Id.* at 6. The creditor filed an objection on the grounds that the debtor improperly acquired title to the property through the Morgans' violation of the due-on-sale provision of the note. *Id.* at 7. The court held "that the treatment of the mortgage in the Plan would be an impermissible modification of [the creditor's] right to enforce the due on sale clause pursuant to the First Lien Deed of Trust." *Id.* at 12. Further, the *Mullin* court cited the *Tewell* case for the proposition that a due-on-sale clause is a "fundamental aspect of a mortgagee's rights[.]" *Mullin*, 355 B.R. at 680.

The distinction between the *Mullin* and *Tewell* cases and the case at bar is that here, Creditor has not objected to its treatment under Debtor's case. In the *Mullin* and *Tewell* cases, the respective creditors objected to their inclusion within each respective debtor's case. Here, Creditor wishes to be included within the case by filing briefs with the Court to further support Debtor's position. The Court cannot ignore this distinction. Moreover, *Mullin* and *Tewell* focus on the impediment of the creditor's rights. Here, Creditor cannot have its rights impeded when it has consented to its treatment within Debtor's plan.

7

Further, a plain reading of 11 U.S.C. § 502(b)(1) reveals that Creditor should be allowed to participate in the bankruptcy process. Section 502(b)(1) states that a claim shall be allowed except when "such claim is unenforceable against the debtor *and* property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C.A. § 502(b)(1) (emphasis added). Congress chose to use the word "and" instead of "or" when describing a situation where a claim is not allowed because it is unenforceable as to the debtor and the debtor's property. Put another way, Congress envisioned that a claim against a debtor should be allowed unless it is unenforceable because there is no in rem and in personam liability on the part of a debtor. The facts presented in this case reveal that Creditor's claim is unenforceable as to Debtor because she is a stranger to the contract. That, however, is not the end of the analysis because Congress deliberately chose to use the word "and," meaning both situations in the statute must be met.

Here, Debtor has what amounts to a wraparound mortgage. A wraparound mortgage is defined as—

> [A] subsequent and subordinate mortgage secured by real property upon which there exists a first mortgage that is outstanding and unsatisfied. The purchase money wraparound mortgage differs from a conventional second mortgage in that the wraparound seller in the transaction remains personally liable under any prior obligation, but the purchaser never becomes personally obligated for such.

***Greenland Vistas, Inc. v. Plantation Place Assocs., Ltd.***, 746 S.W.2d 923, 925 (Tex. App.—Fort Worth 1988, writ denied). As the *Greenland Vistas* case demonstrates, wraparound mortgages are valid under Texas law, creating a property interest for Debtor. Had this transaction violated Texas law, Trustee would be entitled to relief because both requirements under Section 502(b)(1) would be met. In that instance, a bankruptcy claim against Debtor by Creditor would be unenforceable and the property would not receive treatment within the bankruptcy case. Privity of contract,

8

however, is just one step in the analysis, and Debtor has demonstrated Section 502(b)(1) requires more than a lack of privty—it requires a lack of privty and a lack of property interest.

## CONCLUSION

IT IS THEREFORE ORDERED that Trustee's Objection to Claim of Wells Fargo Bank (ECF No. 16) is DENIED.

###